**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mya Noelia Fallon,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-22-01877-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff Mya Fallon's ("Plaintiff") appeal from the Commissioner of the Social Security Administration's ("SSA" or "Defendant") denial of social security disability benefits based on a finding that Plaintiff is not under a disability. (Doc. 1). Plaintiff filed her opening brief on March 3, 2023, (Doc. 12), Defendant responded on May 2, 2023, (Doc. 16), and Plaintiff filed her reply on May 16, 2023, (Doc. 17). The Court now rules.

**I.  BACKGROUND**

The issues presented in this appeal are the following: (1) whether the ALJ improperly addressed the medical opinions and failed to include the limitations assessed by certain medical sources in the residual functional capacity ("RFC") finding; (2) whether the ALJ erred by failing to provide clear and convincing reasons for rejecting Plaintiff's testimony; (3) whether the ALJ improperly rejected the testimony of several lay witnesses without providing germane reasons; and (4) whether the ALJ gave an incomplete hypothetical question at step five and thus improperly relied on vocational testimony from

the vocational expert ("VE"). (Doc. 12 at 2).

### A. Factual Overview

Plaintiff filed her application for Supplemental Security Income ("SSI") on August 31, 2015. (Doc. 12 at 2). On July 25, 2018, an administrative law judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (*Id.*). Plaintiff filed an appeal of the decision in federal district court. (*Id.*). On June 25, 2020, District Court Judge Liburdi issued an order remanding the matter to the SSA for further proceedings. (*Id.*). On September 1, 2022, after another hearing, a new ALJ issued a new decision once again finding Plaintiff not disabled. (*Id.* at 3). Plaintiff then filed another appeal, which is the appeal at issue here. (*Id.*).

### B. The SSA's Five-Step Evaluation Process

To evaluate a claim of disability, the Social Security regulations set forth a five-step sequential process. 20 C.F.R. § 404.1520(a)(4) (2016); *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof through the first four steps, but the burden shifts to the Commissioner in the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows.

First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

At step two, if the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are the "abilities and aptitudes to do most jobs," such as lifting, carrying, reaching, understanding, carrying out and remembering simple instructions, responding appropriately to co-workers, and dealing with changes in routine. *Id.* § 404.1521(b). Further, the impairment must either have lasted for "a continuous period of at least twelve months," be expected to last for such a period, or be expected "to result

in death." *Id.* § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If the claimant does not have a severe impairment, then the claimant is not disabled.

At step three, having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. If not, before proceeding to the next step, the ALJ will make a finding regarding the claimant's "[RFC] based on all the relevant medical and other evidence in [the] case record." *Id.* § 404.1520(e). A claimant's RFC is the most she can still do despite all her impairments, including those that are not severe, and any related symptoms. *Id.* § 404.1545(a)(1).

At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." *Id.* § 404.1520(a)(4)(iv). To make this determination, the ALJ compares the RFC assessment with "the physical and mental demands of [the claimant's] past relevant work." *Id.* § 404.1520(f). If the claimant can still perform the kind of work she previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. *Id.* § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's "residual functional capacity" and her "age, education, and work experience." *Id.* § 404.1520(g)(1). If the claimant can perform other work, she is not disabled. If the claimant cannot perform other work, she will be found disabled.

In evaluating the claimant's disability under this five-step process, the ALJ must consider all evidence in the case record. *See id.* §§ 404.1520(a)(3), 404.1520b. This includes medical opinions, records, self-reported symptoms, and third-party reporting. *See* 20 C.F.R. §§ 404.1527, 404.1529; SSR 06-3p, 71 Fed. Reg. 45593-03 (Aug. 9, 2006).

**C. The ALJ's Application of the Five-Step Evaluation Process**

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 31, 2015, the application date. (Doc. 11-3 at 25; Doc. 11-11 at 7).

At step two, the ALJ found that Plaintiff has the following severe impairments: seizure disorder, neurocognitive disorder, adjustment disorder, post-traumatic stress disorder, and anxiety disorder. (Doc. 11-3 at 26; Doc. 11-1 at 8).

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Doc. 11-3 at 26; Doc. 11-11 at 8). At this step, the ALJ evaluated the following potential listed impairments: 11.02 (epilepsy), 12.02 (neurocognitive disorders), 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders). (Doc. 11-3 at 26–27).[1] The ALJ found Plaintiff had the RFC

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff is] able to perform simple, routine, repetitive, one- or two-step tasks; unable to perform fast-paced assembly line work; unable to climb ladders, ropes, and scaffolds; unable to work at unprotected heights or near dangerous or fast-moving machinery; unable to operate motor vehicles; and unable to perform work that requires counting.

(Doc. 11-11 at 9).

At step four, the ALJ found that Plaintiff has no past relevant work to analyze at this step. (*Id.* at 11).

At step five, the ALJ found that there are jobs "that exist in significant numbers in the national economy that [Plaintiff] could have performed," such as working as an agricultural packer, cleaner II, or harvest worker. (*Id.* at 12). As such, the ALJ determined that Plaintiff was not under a disability.

---

[1] In the most recent ALJ decision, (Doc. 11-11), the ALJ repeatedly referenced the previous ALJ decision, (Doc. 11-3), in analyzing whether Plaintiff met or medically equaled the severity of a listed impairment.

## II. LEGAL STANDARD

The ALJ's decision to deny benefits will be overturned "only if it is not supported by substantial evidence or is based on legal error." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (internal quotation omitted). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Reddick*, 157 F.3d at 720 (internal citation omitted). In other words, substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (internal citation omitted). In determining whether there is substantial evidence to support a decision, the Court considers the "record as a whole, weighing both the evidence that supports the ALJ's conclusions and the evidence that detracts from the" ALJ's conclusions. *Reddick*, 157 F.3d at 720. "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence." *Gallant*, 753 F.2d at 1453 (internal citations omitted); *see Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *see Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before the Court, substantial evidence supports the ALJ's decision and the decision is free from legal error, the Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g) (2012). On the other hand, the Court "may not affirm simply by isolating a specific quantum of

supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation and citation omitted).

Notably, the Court is not charged with reviewing the evidence and making its own judgment as to whether Plaintiff is or is not disabled. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Rather, the Court's inquiry is constrained to the reasons asserted by the ALJ and the evidence relied upon in support of those reasons. *See id.*

## III. DISCUSSION

### A. The ALJ's Consideration of Medical Opinions in the RFC Determination

Plaintiff first argues that the ALJ improperly rejected medical evidence when making his RFC determination. Plaintiff notes the statement of her treating neurologist, Dr. Drazkowski, in which "he opined that [Plaintiff] had multiple severe work-related mental limitations as a result of her cognitive impairment." (Doc. 12 at 14). Specifically, Plaintiff points out that the ALJ in the current decision simply incorporated the previous ALJ findings by reference and failed to mention Dr. Drazkowski's letter submitted September 17, 2018. (*Id.*). As for the prior ALJ decision, Plaintiff points out that Dr. Drazkowski examined Plaintiff multiple times, that Dr. Drazkowski's opinion is consistent with the opinions of "all of the other treating and examining doctors in the record," and that neither ALJ provided clear and convincing reasons for discounting Dr. Drazkowski's opinion. (*Id.* at 15).

Plaintiff further asserts that the ALJ also erred in his assessment of Plaintiff's examining psychologist, Dr. O'Connell. (*Id.*). Plaintiff states that "[t]he need for a reassessment of Dr. O'Connell's opinion was one of the reasons for this Court's prior remand of this matter," and that the ALJ here again failed to provide clear and convincing reasons to discount Dr. O'Connell's opinion. (*Id.* at 15–16).

Like with Dr. Drazkowski, Plaintiff points out that as for Plaintiff's treating mental health counselor, LPC Galler, the current ALJ opinion simply incorporates by reference the findings in the prior ALJ opinion. (*Id.* at 16). Plaintiff asserts that the current ALJ failed

to mention the updated records from LPC Galler, namely, a letter submitted after the first ALJ decision that Plaintiff argues lists symptoms consistent with the record. (*Id.* at 16–17).

Finally, Plaintiff argues that the ALJ improperly evaluated opinions from Dr. Rabara, a doctor who examined Plaintiff on November 9, 2015. (*Id.* at 17). Plaintiff asserts that, like with Dr. O'Connell, "[a] need to reevaluate Dr. Rabara's opinion was one of the reasons for this Court's prior remand." (*Id.*). Plaintiff argues that the ALJ's reason for assigning only "partial weight" to the opinion was in error. (*Id.*).

Defendant argues first that the ALJ reasonably found the opinions of Drs. Rabara and O'Connell to be partially persuasive. (Doc. 16 at 8). Specifically, Defendant argues that the ALJ reasonably concluded that any opinion assessing a greater than moderate mental limitation was inconsistent with Plaintiff's activities. (*Id.* at 8–9). Defendant further asserts that "in Social Security law, 'moderate' limitations are generally consistent with an ability to perform work." (*Id.* at 9). Defendant also points out that Dr. Rabara "did not assess any limitations beyond those the ALJ already included in the [RFC] assessment." (*Id.* at 10).

Defendant next argues that the law of the case doctrine precludes Plaintiff's arguments regarding the opinions of Dr. Drazkowski and LPC Galler. (*Id.*). Defendant argues that the Court's 2020 order remanding the original ALJ decision "rejected Plaintiff's arguments that the prior ALJ erroneously discounted" these two opinions. (*Id.*). Defendant asserts that because Plaintiff did not argue that any exceptions to law of the case doctrine exist, Plaintiff has forfeited the issue; further, even if the Court considered potential exceptions on the merits, no exception applies. (*Id.* at 11). Defendant finally argues that Dr. Drazkowski did not offer any additional medical opinion that the ALJ was required to evaluate because the later statement merely reiterated the opinions expressed in the previous statement, which the ALJ did consider in the previous decision.[2] (*Id.* at 12–13).

The Court first addresses whether the law of the case doctrine bars this Court from

---

[2] In her reply brief, Plaintiff argues that the ALJ must consider the two opinions discussed in this paragraph because both providers submitted updated medical opinions for the current case. (Doc. 17 at 2).

- 7 -

considering Plaintiff's arguments regarding the opinions of Dr. Drazkowski and LPC Galler. "Under the 'law of the case' doctrine, 'a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.'" *Ischay v. Barnhart*, 383 F. Supp. 2d 1199, 1214 (C.D. Cal. 2005) (quoting *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993)). Moreover, "[t]he [law of the case] doctrine does not require that any issue actually have been adjudicated; rather, it applies to this Court's 'explicit decisions as well as those issues decided by necessary implication.'" *Id.* at 1217 (quoting *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995)). Five circumstances exist under which a court has discretion to depart from the law of the case doctrine: (1) the first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result. *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).

The Court thus addresses the two medical opinions Defendant argues cannot be reevaluated: Dr. Drazkowski and LPC Galler. The ALJ's decision to discount the opinions of Dr. Drazkowski and LPC Galler has previously been held to be supported by substantial evidence. *See generally Fallon v. Comm'r of Soc. Sec. Admin.*, No. CV-19-04704-PHX-MTL, 2020 WL 3470288 (D. Ariz. June 25, 2020). Thus, the Court finds that the law of the case doctrine bars reconsideration in this case unless one or more of the listed exceptions apply. Plaintiff does not argue any specific exception. As such, this Court interprets Plaintiff's brief as advancing an argument that the evidence on remand was substantially different because Plaintiff's brief points to the new statements that each provider gave on remand. However, by Plaintiff's own words, the new statement by Dr. Drazkowski "noted that he had reviewed his prior opinions and that these still accurately represented [Plaintiff's] overall condition." (Doc. 17 at 2). As for LPC Galler, upon review of each of LPC Galler's statements, the Court did not locate any substantially different evidence in the updated statement. (*Compare* Doc. 11-10 at 6–8 (the prior statement), *with* Doc. 11-16 at 2–3 (the updated statement)). Thus, the Court finds that the law of the case

doctrine applies to bar Plaintiff from relitigating the reasonableness of the ALJ's decision to discount Dr. Drazkowski's and LPC Galller's statements.

The Court next turns to whether the ALJ erred in his treatment of the opinions of Drs. Rabara and O'Connell. In making a determination of disability, the ALJ must develop the record and interpret the medical evidence. *See Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir.1996). An ALJ must assess a claimant's RFC "based on all the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). In doing so, the ALJ must consider the "combined effect" of all the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Id.* § 416.923.

"However, in interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted) (affirming district court's holding that the ALJ was not required to discuss every piece of evidence and that the ALJ's decision was supported by substantial evidence). "[E]vidence that is neither significant nor probative" does not need to be discussed. *Id.* Further, the ALJ does not need to weigh conclusions couched as medical opinions. "A statement by a medical source that [a claimant] is 'disabled' or 'unable to work'" is not a medical opinion. 20 C.F.R. § 404.1527(d)(1). These are "opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; *i.e.* that would direct the determination or decision of disability." *Id.* § 404.1527(d). The Court must determine "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant*, 753 F.2d at 1453.

In Plaintiff's previous appeal, District Court Judge Liburdi found that the ALJ failed properly to account for the various impairments that each doctor noted in their statements, instead considering only the improvements the doctors listed. *Fallon*, 2020 WL 3470288 at *3. For example, the previous order noted that Dr. Rabara "indicated that [Plaintiff's] functional abilities were diminished following her surgery," and that the ALJ overemphasized a "single, minor finding" as the means to discount Dr. O'Connell's

opinion. *Id.*

In the presently appealed decision, the ALJ accounted for the opinion of Dr. Rabara in the following manner:

> Notably, in his November 2015 evaluation, M. Rabara, Psy.D., opines that the claimant has had mild and moderate limitations, including moderate limitations in performing detailed tasks, sustaining concentration, completing a normal workday, traveling to unfamiliar places, and setting realistic goals (Exhibit 12F/7).

(Doc. 11-11 at 10).

As for Dr. O'Connell, the ALJ noted the following:

> Similarly, in her February 2018 assessment, C. O'Connell, Ph.D., opines that the claimant has had moderate limitations with respect to numerous work-related mental functions, including the following: understanding, remembering, and carrying out detailed tasks; sustaining a work schedule; making simple work-related decisions; responding to work pressures and changes; accepting instructions and responding appropriately to criticisms from supervisors; being aware of normal hazards; and traveling in unfamiliar places or using public transportation (Exhibit 25F/1-3).
> Dr. O'Connell also opines that she has had moderately severe limitations with respect to the following: sustaining concentration for prolonged periods; completing a normal workday without interruptions from psychologically based symptoms; getting along with coworkers without distracting them; and setting realistic goals and making plans independently of others (Exhibit 25F/1-3).

(*Id.*). The ALJ then assigned partial weight to each opinion "to the extent that [Plaintiff] is found to have moderate limitations" in various tasks that were also reflected in the ALJ's RFC determination. (*Id.*).

The Court finds that the ALJ reasonably assigned only partial weight to these opinions. Unlike the previous ALJ decision, the ALJ here listed and considered impairments as well as improvements which were contained in the two opinions. The ALJ found that although these two opinions list various impairments, the record of Plaintiff's

daily ongoing activities[3] contradicted the level of severity alleged in the opinions. Although Plaintiff points to disputes of fact as to the true extent of her impairments, this Court is not in the position of resolving disputes of fact or credibility. This Court reviews the ALJ's decision to determine whether the decision is supported by substantial evidence; here, the ALJ considered all relevant evidence—including the evidence the prior ALJ neglected—and credited the opinions of Drs. Rabara and O'Connell with partial weight and limited Plaintiff's RFC accordingly. The Court finds no reversible error on this ground.[4]

### B. The ALJ Rejecting Plaintiff's Testimony

Plaintiff next argues that the ALJ erred in rejecting Plaintiff's subjective testimony, first pointing out that one of the reasons for remanding the prior ALJ decision was for reconsideration of Plaintiff's testimony. (Doc. 12 at 18). Plaintiff asserts that the ALJ failed to identify specific records contrary to any of Plaintiff's specific statements. (*Id.*). Plaintiff further argues that the activities of daily living she is able to perform are not inconsistent with her disability testimony, as the record shows that Plaintiff is unable to do these daily activities without "modifications, extensive support, and special supervision" the likes of which would not exist in a work environment. (*Id.* at 19–20).

Defendant argues that the ALJ properly considered Plaintiff's testimony by (1) partially accounting for her statements by restricting Plaintiff's RFC and (2) reasonably concluding that Plaintiff's allegations were not fully reliable because they were inconsistent with her activities. (Doc. 16 at 6). Defendant points out that although Plaintiff

---

[3] The ALJ pointed to the following examples of ongoing activities, among others: enrollment and relative success in college courses, running for an hour in the heat, hiking, picking corn for hours, socializing with friends and family, and participation in dance classes and performances.

[4] The Court also notes Plaintiff's argument that the ALJ did not properly interpret the "moderate" impairments as they were defined in Dr. O'Connell's opinion—Plaintiff argues that Dr. O'Connell's opinion defined "moderate" as having noticeable difficulty for eleven to twenty percent of a workday. (Doc. 17 at 4; *see also* Doc. 11-10 at 156). However, even if this were error, the error is harmless because the ALJ reasonably discounted Dr. O'Connell's opinion to the extent that she assessed any impairment greater than the "moderate" impairments consistent with the record and as defined by the SSA. Moreover, as noted above, an ALJ need not consider disability conclusions couched as medical opinions. Dr. O'Connell's statement that Plaintiff's likelihood of being employable is low is just such a conclusion. Thus, the Court finds Plaintiff's additional arguments regarding Dr. O'Connell's opinion unavailing.

has pointed to some evidence contradicting the ALJ's findings, "Plaintiff's mere disagreement over which conflicting evidence to credit, and which to reject, is not a valid reason for reversal" because the ALJ is ultimately the trier of fact. (*Id.* at 7).

In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of her symptoms, the ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). First, as a threshold matter, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the claimant meets the first test, then "the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain the credibility evaluation. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citing *Smolen v. Chater*, 80 F.3d 1273, 1283–84 (9th Cir. 1996)).

In rendering a credibility determination, the ALJ may consider several factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen*, 80 F.3d at 1284). If the ALJ relies on these factors and his reliance is supported by substantial evidence, the Court "'may not engage in second-guessing.'" *Id.* (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)).

In the prior appeal, District Court Judge Liburdi found the previous ALJ decision

deficient in its consideration of Plaintiff's testimony because the prior ALJ "offered a single reason for rejecting Plaintiff's symptom testimony—its purported inconsistency with the medical evidence." *Fallon*, 2020 WL 3470288 at *3. The prior appeal's order explicitly noted that the ALJ failed to cite to Plaintiff's daily activities when discounting Plaintiff's testimony. *Id.*

Here, the Court finds that the ALJ reasonably credited Plaintiff's subjective testimony with partial weight to the same extent as the opinions from Drs. Rabara and O'Connell—that is, to the extent that Plaintiff has some moderate limitations in some areas of functionality. (Doc. 11-11 at 10). The ALJ found that "[Plaintiff's] ongoing activities, including enrollment in college courses full-time, socializing with friends and family, and engaging in significant physical exertion, contradict a finding of more severe limitations."[5] (*Id.*). As such, the ALJ provided clear and convincing reasons for partially crediting Plaintiff's subjective testimony. The Court finds no reversible error on this basis.

### C. The ALJ Rejecting Lay Witness Testimony

Plaintiff next argues that the ALJ erred by rejecting lay witness testimony. Specifically, Plaintiff points to the statements of her stepmother, her father, and her sister, each of which described various deficits in Plaintiff's function "consistent with those described by the examining and treating sources in the record." (Doc. 12 at 21). Plaintiff notes that the need for reevaluating the lay witness statements was another of the reasons why the original ALJ decision was remanded. (*Id.*). Like the ALJ's treatment of Plaintiff's own testimony, Plaintiff argues that the ALJ erred by using evidence of Plaintiff's daily activities to discount the lay witness testimony without accounting for the various modifications and/or limitations associated with such daily activities. (*Id.*).

Defendant argues that the ALJ permissibly discounted the lay witness testimony because "[w]here, as here, the lay witness statements are similar to [Plaintiff's] allegations, an ALJ may reject lay witness testimony for the same reasons he rejected [Plaintiff's]

---

[5] Footnote 3 discusses additional ongoing activities that the ALJ referenced in his decision to credit with partial weight the following: (1) medical opinion of Drs. Rabara and O'Connell, (2) Plaintiff's subjective testimony, and (3) lay witness testimony (discussed below).

subjective complaints." (Doc. 16 at 8). Thus, Defendant argues that because the ALJ reasonably discounted Plaintiff's testimony, the ALJ also reasonably discounted the lay witness testimony at issue. (*Id.*).

"Competent lay witness testimony cannot be disregarded without comment, and in order to discount competent lay witness testimony, the ALJ must give reasons that are germane to each witness." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1007 (9th Cir. 2015) (internal quotation marks and alterations omitted) (citing *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012)). The ALJ, however, need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114.

The prior appeal order found that the ALJ failed to provide a germane reason for rejecting the lay witness testimony because the reasons the prior ALJ provided—namely, that the testimony was inconsistent with the record, the lay witnesses were not medically trained, and the witnesses have bias—were insufficient. *Fallon*, 2020 WL 3470288 at *4.

Here, the Court finds that the ALJ provided germane reasons for crediting the lay witness testimony with partial weight to the same extent and for the same reasons as those discussed above. Thus, the Court finds no reversible error on this basis.

### D. The ALJ's Hypothetical Question & Step Five Finding

Lastly, Plaintiff argues that the ALJ's Step Five finding was not supported by substantial evidence. Specifically, Plaintiff points out that the ALJ's RFC finding limits Plaintiff to one- to two-step tasks, which is directly consistent with General Education Development ("GED") Reasoning Level 1. (Doc. 12 at 22). However, the ALJ found at Step Five that Plaintiff could perform the occupations of agricultural packer and cleaner II, both of which have a GED Reasoning Level of 2, a level beyond Plaintiff's RFC. (*Id.*). As to the final occupation the ALJ listed, harvest worker, Plaintiff argues that this role requires "duties similar to the corn detasseling job [Plaintiff] attempted several years ago and was unable to manage without constant direct supervision from her siblings." (*Id.* at 23).

Plaintiff further argues that the hypothetical question the ALJ posed to the VE, the ALJ "omitted [Plaintiff's] credible allegations, the limitations described by the three lay witnesses, and the limitations assessed by multiple treating and examining doctors and a mental health counselor." (*Id.*). Thus, Plaintiff argues, the VE's testimony has no evidentiary value because it does not account for all of Plaintiff's limitations. (*Id.*).

Defendant concedes that the occupations of agricultural packer and cleaner II exceed the level of reasoning Plaintiff was determined to have. (Doc. 16 at 13). However, Defendant asserts that this error is harmless because the remaining occupation, harvest worker, exists in significant numbers in the economy. (*Id.*). As for the lay witness statement that Plaintiff could not perform a similar occupation without supervision, Defendant argues that the ALJ reasonably discounted that lay witness opinion, and thus reasonably did not factor in this testimony. (*Id.* at 14). Finally, Defendant argues that because the ALJ reasonably assessed Plaintiff's RFC and included the RFC in his hypothetical question, the ALJ did not err in posing his hypothetical question to the VE. (*Id.*).

An ALJ must pose a hypothetical question to the VE that "contain[s] all of the limitations that the ALJ found credible and supported by substantial evidence in the record." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). "If the assumptions in the hypothetical are not supported by the record, the opinion of the [VE] that [a] claimant has a residual working capacity has no evidentiary value." *Gallant*, 753 F.2d at 1456.

The Court first addresses the hypothetical question the ALJ posed to the VE. Because the Court has found that the ALJ satisfactorily evaluated Plaintiff's RFC and related the RFC to the VE, the Court finds no reversible error in the hypothetical question the ALJ posed. *See Bayliss*, 427 F.3d at 1217–18 ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record. The ALJ's reliance on testimony the VE gave in response to the hypothetical therefore was proper.").

The Court next addresses the hypothetical occupations that Plaintiff was assessed to be capable of performing, and whether the ALJ committed reversible error when he listed

two occupations that were inconsistent with Plaintiff's RFC. Although the ALJ committed an error here, the Court concludes that the ALJ's error was harmless. *See McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011) (holding that, in social security proceedings, the party attacking an agency decision has the burden of showing both error and harm inflicted). The Ninth Circuit Court of Appeals has previously held that an ALJ's conclusion that 25,000 national jobs is sufficient, albeit a "close call." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014). Here, the third job the ALJ listed—harvest worker—comports with the reasoning level the ALJ assessed, and the VE testified that there were 400,000 of such jobs in the national economy. As such, the ALJ reasonably found that jobs exist in significant numbers in the national economy at step five, and any error committed is harmless. The Court thus finds no reversible error on this basis.

### IV.     CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**. The Clerk of Court shall enter judgment accordingly.

Dated this 11th day of December, 2023.

James A. Teilborg
Senior United States District Judge